

October 23, 2019

**VIA E-FILING**
The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Room 6124, Unit 26
Wilmington, DE 19801-3556

      RE:    *Elm 3DS Innovations, LLC v. Micron Technology, Inc., et al.*,
               (C.A. No. 14-cv-1431-LPS)

Dear Chief Judge Stark,

      Plaintiff Elm 3DS Innovations, LLC respectfully requests that the Court compel Micron to respond to three interrogatories seeking sales data Elm needs to help the jury calculate damages in this case. First, Elm requests that the Court compel Micron to respond to an interrogatory requesting revenue information for products made or sold in the U.S., which Micron has dragged its feet for months on providing. Second, Elm requests that the Court compel Micron to respond to an interrogatory requesting revenue information for components that it manufactures in or supplies from the U.S., even if that component is incorporated into a product sold outside the U.S. *See WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2139 (2018). Third, Elm requests that the Court compel Micron to respond to an interrogatory requesting worldwide revenue information. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 04-1371-LPS, 2018 WL 4804685, at *1 (D. Del. Oct. 4, 2018).

**I.    Micron Should Provide an Interrogatory Response About Revenue for Products Made or Sold in the United States**

      Since mid-summer, Elm has been struggling to get basic revenue information from Micron about the accused products in this case. Despite the fact that Micron agreed that it must provide this information at least for products made or sold in the U.S., Micron resisted providing this discovery at every turn.

      In response to an interrogatory asking for revenue information for products manufactured, sold, offered for sale, or imported into the United States, Micron lodged two and half pages of objections but did not provide any substantive response. (Ex. A at 1, 6.) Eventually, Micron agreed to produce revenue information "by mid- to late-September." (Ex. B at 1.) September came and went. On October 1, Micron informed Elm that it encountered "some issues" when trying to produce the data but that it anticipated resolving those issues "within the next week." (Ex. C at 3.) That week came and went as well. After Elm submitted its letter requesting this discovery conference, Micron produced a spreadsheet that appears to contain some sales data. But Micron has still not updated its interrogatory response. Given Micron's history of refusing to produce information that even it agrees it must, the Court should compel Micron to update its interrogatory response and finally comply with its discovery obligations.

**II.   Micron Should Produce Revenue for Components That It Manufactures in or Supplies From the United States**

As the Court knows, 35 U.S.C. § 271(f) "expands the definition of infringement to include supplying from the United States a patented invention's components." *WesternGeco*, 138 S. Ct. at 2134. In *WesternGeco*, the Supreme Court held that a plaintiff may recover damages under § 271(f) when a defendant supplies components from the U.S. to be combined outside the U.S. in an infringing manner. *Id.* at 2139.

This case involves stacked semiconductors. The central insight of the patents was that a flexible semiconductor die could be used to create stacked semiconductors and that one could build such devices by combining a substrate that had been thinned and polished to be substantially flexible with low-stress dielectrics. Micron manufactures semiconductor dies in the U.S. that are stacked to make semiconductors. Under *WesternGeco*, if Micron manufactures those dies in the U.S. and then ships them abroad to be stacked into an accused product, Elm is entitled to damages for that conduct.

So Elm served the following interrogatory asking Micron to identify revenue for semiconductor dies it manufactures in or supplies from the U.S.: "Identify on a product-by-product basis the monthly revenue and profit for any component that you manufacture in or supply from the U.S. that is incorporated into a Product that contains a semiconductor layer that is 50 microns or less." (Ex. D at 6.) Once again, Micron failed to substantively respond. (*Id.* at 9.) But now Micron has made clear that it refuses to produce this information. (Ex. C at 3.)

Micron claims that it need not produce this information because the semiconductor dies that Micron manufactures in the U.S. do not constitute "all or a substantial portion" of the invention. *See* 35 U.S.C. 271(f)(1).[1] Micron tries to limit the invention to "the stacking of multiple chips," but that theory ignores the heart of the invention: using substantially flexible semiconductor die to make manufacturing stacked semiconductors feasible. That theory also ignores the many asserted claims that cover stacked semiconductor products and not just the process of stacking those semiconductors. The die Micron manufactures in the U.S. are a substantial portion of the components of the patented invention.[2] Micron may disagree, but Micron cannot refuse to provide discovery relevant to Elm's theory of the case just because it has a different theory. It must provide "discovery regarding any nonprivileged matter that is relevant to any party's claim," including Elm's. *See* Fed. R. Civ. P. 26(b)(1).

Finally, Micron claims that it should not have to produce this information because Elm has not yet included this argument in its infringement contentions. That gets it backwards. Elm cannot yet provide meaningful infringement contentions because Micron has produced no information. Micron is the party who knows which dies it manufactures and ships from the U.S. for use in stacked semiconductor products. Once it produces that information, Elm will update its infringement contentions accordingly. For now under *WesternGeco*, the Court should compel Micron to provide information about components it manufactures in or supplies from the U.S.

---

[1] Micron has not articulated any reason why it would not be liable under 35 U.S.C. § 271(f)(2) for exporting die that are specially designed to be incorporated into a stacked semiconductor.

[2] Micron also likely causes to be supplied from the U.S. additional components of the invention.

**III.    Micron Should Produce Worldwide Revenue by Product**

Finally, since *WesternGeco*, this Court has had an opportunity to address whether its reasoning applies to infringement under § 271(a) as well. This Court concluded that "[t]he Supreme Court's analysis of the patent damages statute, § 284, has equal applicability to . . . direct infringement allegations . . . governed by § 271(a), as it did to the supplying a component infringement claims at issue in *WesternGeco II*, which were governed by § 271(f)(2)." *Power Integrations*, 2018 WL 4804685, at *1. Therefore, damages that are the direct and foreseeable result of patent infringement inside the U.S. should be recoverable, whether or not those damages occur within the U.S.

Here, for example, Micron supplies Apple Inc. with infringing semiconductors. (*See* Ex. E at 17 (listing Micron as an Apple supplier).) Elm expects that to do so, Micron offers its infringing products for sale in the U.S. Micron likely meets with Apple in the U.S. to market its products, determine the semiconductors' specifications, and negotiate the terms under which it will sell the semiconductors. If Micron then manufactures those semiconductors at a foreign fabrication plant and delivers them to a foreign company in Apple's supple chain, Micron should not be insulated from paying damages for the infringing conduct that occurred here.

To gather the information needed to calculate those damages, Elm asked, "For any Product made or sold by you that contains a semiconductor layer that is 50 microns or less, identify on a worldwide, product-by-product basis the monthly revenue and profit from 2008 through 2018." (Ex. A at 7.) Micron refuses to respond. (*See id.* at 9; Ex. C at 3.)

The only justification Micron has given for refusing to acknowledge this Court's *Power Integrations* decision is that the plaintiff in that case used lost profits to measure damages and Elm is using a reasonable royalty. That misses the point. As the Supreme Court explained in *Western Geco*, "a patent owner is entitled to recover the difference between its pecuniary condition after the infringement, and what its condition would have been if the infringement had not occurred." 138 S. Ct. at 2139 (internal quotation marks and citation omitted). Lost profits is one way that difference can be measured but not the only way. The Supreme Court did not limit its holding about the Patent Act's exterritorial application to only lost profits cases.

Elm recognizes that the law on this issue has been in flux over the last year since *WesternGeco*. But as the law currently stands in this Court under *Power Integrations*,[3] Elm should at least get discovery into this information to determine whether Micron's domestic patent infringement resulted in foreign sales for which Elm should recover a reasonable royalty. Even courts that have disagreed with *Power Integrations* have at least allowed discovery into this information. *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL 2437073, at *1 (N.D. Cal. June 11, 2019) (discussing how the court "allowed discovery on Micron's worldwide sales"). Whether and to what extent the Court will ultimately allow Elm to pursue damages for Micron's worldwide sales will be a question for another day. For now, the Court should compel Micron to provide worldwide revenue information.

---

[3] On October 22, 2019, the parties in the *Power Integrations* case settled. (Ex. F.) So the question this Court certified to the Federal Circuit will remain unanswered, at least for now.

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc: Counsel of Record (via E-File)