Frederick L. Cottrell, III
Director
302-651-7509
cottrell@rlf.com

October 25, 2019

**VIA CM/ECF & HAND DELIVERY**

The Honorable Leonard P. Stark
United States District Court
District of Delaware
844 King Street
Wilmington, DE  19801

                    Re:    *Elm 3DS Innovations LLC v. Micron Tech. Inc. et al,*
                           C.A. No. 1:14-1431-LPS-CJB;

Dear Chief Judge Stark:

      Elm requests the Court to compel Micron to produce worldwide revenue and profits information for products that Micron does *not* make in the United States, does *not* test in the United States, does *not* import into the United States, and does *not* sell in the United States.  Revenue and profit from purely foreign activity have no bearing in this case.  Elm's requested discovery is designed to elicit information that will confuse the jury and inflate the royalty base for its damages claim.  The Court should reject Elm's fishing expedition.

**I.    Elm's Request To Compel An Interrogatory Response About Revenue For Products Made Or Sold In The United States Is Moot**

      Micron agreed to provide—and has provided—revenue and profit information for accused products made by Micron in the United States, tested by Micron in the United States, imported by Micron into the United States, or sold by Micron in the United States, i.e., all accused products having a nexus to Micron's domestic activities.  Micron supplemented its response to Elm's interrogatories on October 24.  *See* Ex. 1, Supplemental Response to Plaintiff's 4th Interrogatories; Ex. 2, Supplemental Responses to Plaintiffs 3rd Interrogatories at 9, 12.  Ex. 3, Redacted Excerpt of Micron's document cited in the Interrogatory Responses.  There never was an impasse on this issue as Micron advised Elm long before Elm filed its request for a discovery teleconference that Micron was in the process of compiling the requested information.  *See* Ex. 4, V. Zhou email to N. Knobloch dated August 26, 2019.

**II.    Elm's New Infringement Theory Under § 271(f) Is Grounded On Speculation**

      By its supplement, Micron fully responded to Interrogatory No. 5, to the extent it has any bearing on this case.  Yet, Elm now argues that Micron should also provide profit and revenue information for non-accused components, such as a single-layer wafer or die, that may be stacked to form an end product outside the United States, and sold outside the United States.

      Before Elm demands discovery of worldwide revenue and profits from Micron, it must show that such sales are "linked to any [infringement] allegations properly in this case." *Tessera v. Broadcom,* 2017 WL 4876215, at *5 (D. Del. Oct. 24, 2017).  In *Tessera,* plaintiff sought

production of Broadcom's worldwide sales data, arguing that "worldwide sales data for all accused products is relevant to Tessera's indirect infringement allegations" because "Broadcom may be liable for indirect infringement…if they sold infringing products overseas, and those products later make their way into the U.S. (e.g., by being incorporated into third-party products that are sold in the U.S." *Id.* at *4. Judge Burke rejected this argument, explaining that while "Tessera does not need to prove conclusively the substance of its indirect infringement claims," it still "needs to show that its request is premised on more than 'mere suspicion or speculation' as to how the discovery is linked to indirect infringement allegations properly in this case." *Id.* at *5. Judge Burke found Tessera failed to meet this burden, because it failed to provide "any information *particular* to any accused product or any third-party maker of any representative downstream product that could lead to the conclusion that a Broadcom accused product that was sold overseas was, *in fact*, later brought back into the U.S." *Id.* (emphasis original).

Here, Elm fails to make any showing beyond "mere suspicion or speculation" that Micron's wafers and dies are combined outside the United States in a way that allegedly infringes Elm's patents under § 271(f). Elm asserted this new theory of infringement for the first time in a discovery conference almost five years into this case. Elm had not disclosed this new theory in any pleadings or infringement contentions. *See, e.g.,* Ex. 5, Excerpts from Elm's Infringement Contentions. Elm failed to provide any plausible support for its assertion that Micron's wafers and dies are combined to form final products in a way that would infringe Elm's patents if done in the United States. Nor could it have done so, since Elm sought no discovery from any third party whom Elm alleges stacks Micron's wafers or dies outside the United States. Thus, Elm appears to have formulated this new § 271(f) theory to justify its fishing expedition.

Elm's § 271(f) theory also lacks support. To claim infringement under § 271(f), Elm must show that the wafers and dies supplied from the United States constitute "all or substantial portion of the components of a patented invention" (35 U.S.C. § 271(f)(1)), or that those components are "especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use" (§ 271(f)(2)). But Elm failed to show any support beyond mere speculation that "Micron also likely causes to be supplied from the U.S. additional components of the invention." D.I. 201 at 2, fn. 2. Elm's footnote proves one thing though—that the asserted claims require additional components beyond Micron's wafers and dies. Yet, Elm presents no support for its assertion that Micron's wafers form a "substantial portion" of the components of Elm's alleged invention under § 271(f)(1). Section 271(f)(1) also requires that the alleged infringer "actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States." Elm offers no showing of active inducement to combine the components by anyone either.

Section 271(f)(2) is equally unavailing. The wafers and dies supplied by Micron from the United States are also used to make non-stacked chips. Elm does not argue that the non-stacked chips made from Micron's wafers and dies infringe any of Elm's asserted claims. Thus Micron's wafers and dies are suitable for a substantial noninfringing use. Instead, Elm attempts to shift the burden of showing relevance to Micron, arguing that "Micron has not articulated any reason why it would not be liable…." D.I. 201 at 2, fn. 1. But the question is not whether Micron had shown noninfringement under every conceivable theory Elm may come up with. Rather, the pertinent question is whether Elm has shown support for what it simply assumes—

The Honorable Leonard P. Stark
October 25, 2019
Page 3

that Micron designs its dies for incorporation into a stacked semiconductor. The answer is no.

### III. The Court's *Power Integrations* Decision Is Not Applicable To This Case

Elm asserts that the Court's order in *Power Integrations v. Fairchild Semiconductor*, 2018 WL 4804685 (D. Del. Oct. 4, 2018), establishes that Elm is entitled to information on worldwide sales of Micron's products, even for those products untethered to Micron's U.S. activity. Not so. In *Power Integrations*, plaintiff argued that "it was entitled to 'full compensation' in the form of damages based on loss of sales in foreign markets which it claims were a foreseeable result of infringing conduct in the United States." *See Power Integrations v. Fairchild Semiconductor*, 711 F.3d 1348, 1372 (Fed. Cir. 2013). The Federal Circuit rejected this theory and disallowed recovery of damages based on foreign sales, regardless of any foreseeable nexus between the domestic act of infringement and worldwide damages. *Id.* at 1731. This Court found that the Supreme Court's decision in *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018), permitting recovery of foreign damages stemming from *domestic* infringement, applied equally to § 271(a) as well as § 271(f)(2). But that does not mean a plaintiff can recover damages from entirely foreign acts divorced from any domestic activity.

*Plastronics v. Dong Weon Hwang* further explains the interplay between *WesternGeco* and *Power Integrations*. *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, 2019 WL 4392525, at *5 (E.D. Tex. June 11, 2019), report and recommendation adopted, 2019 WL 2865079 (E.D. Tex. July 3, 2019). "*WesternGeco*…suggests that foreign *damages* are compensable for domestic infringement under § 271(a), just as they are compensable for domestic infringement under § 271(f)(2)." *Plastronics*, 2019 WL 4392525, at *5 (emphasis original). "For example, a plaintiff might prove that a product made in the United States was sold abroad, that a domestic sale to a regular customer of plaintiff supplanted foreign sales that plaintiff would have made to that customer, or that a product imported into the United States was subsequently sold internationally. Each of these instances would constitute infringement under § 271(a), and thus, under the reasoning of *WesternGeco*, would be compensable even if the sale that caused damage ultimately occurred abroad. However, a plaintiff cannot recover under § 271(a) for *purely foreign* manufacturing, use, sales, or offers because these acts do not constitute infringement under § 271(a)." *Id.* (emphasis added). Yet, Elm argues precisely the opposite—that Micron's purely foreign manufacture, use, sales, or offers—entirely divorced from any domestic activity—may form the basis for damages under *WesternGeco*. This extreme reading of *WesternGeco* is unsupported by this Court's *Power Integrations* order, or by any other court.

Unlike *Power Integrations*, the foreign revenue and profits information Elm seeks is not connected to any act of *domestic* infringement. Instead, Elm seeks worldwide revenue and profits information for products *not* made in the United States, *not* tested in the United States, *not* imported into the United States, and *not* sold in the United States.[1] Micron's worldwide revenue and profits, unconnected to any *domestic* acts, have no bearing on any royalty Elm may claim. *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 2019 WL 2437073, *3 (N.D. Cal., 2019) (plaintiff "may not seek damages based on Micron's wholly foreign sales").

---

[1] To the extent any products have any connection to the United States so as to be subject to § 271(a), Micron has produced worldwide revenue and profits information. *See* Ex. 1; Ex. 2 at 9, 12; Ex. 3.

For the foregoing reasons, Micron respectfully requests the Court deny Elm's motion.

Respectfully,

*/s/ Frederick L. Cottrell, III*

Frederick L. Cottrell, III (#2555)

cc: All Counsel of Record